Gerrit M. Pronske
State Bar No. 16351640
Rakhee V. Patel
State Bar No. 00797213
Christina W. Stephenson
State Bar No. 24049535
PRONSKE & PATEL, P.C.
2200 Ross Ave., Ste. 5350
Dallas, Texas 75201
(214) 658-6500 - Telephone
(214) 658-6509 – Telecopier
Email: gpronske@pronskepatel.com
Email: rpatel@pronskepatel.com
Email: cstephenson@pronskepatel.com

**COUNSEL FOR DEBTORS**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § § § | |
| **MORRIS RADIO ENTERPRISES, L.L.C.,** dba THE BUSINESS SHRINK and | § § § § | CASE NO. 09-31416-HDH-11 |
| **PRS, II, LLC, dba FORT MORGAN** | § § § | CASE NO. 09-31436-BJH-11 |
| Debtors | § § § § § | Jointly Administered Under Case No. 09- 31416 HDH-11 |

**DEBTOR'S RESPONSE TO WHITE SANDS GROUP, L.L.C.'S AMENDED
MOTION TO DISMISS DEBTOR PRS II LLC'S CHAPTER 11 CASE,
OR, IN THE ALTERNATIVE, FOR CHANGE OF VENUE**

PRS, II, LLC, dba Fort Morgan (the "Debtor" and/or "Debtor in Possession") files this

*Response to White Sands, LLC's Motion to Dismiss Debtor PRS II LLC's Chapter 11 Case, or,*

*in the Alternative, for Change of Venue* (the "Response") as follows:

**I.    INTRODUCTION**

1.    *White Sands Group, LLC's* ("White Sands" or "Movant") *Amended Motion to*

*Dismiss Debtor PRS II LLC's Chapter 11 Case, or, in the Alternative, for Change of Venue*

**DEBTOR'S RESPONSE TO WHITE SANDS GROUP, LLC'S AMENDED MOTION TO DISMISS
DEBTOR PRS II LLC'S CHAPTER 11 CASE, OR, IN THE ALTERNATIVE, FOR CHANGE OF VENUE
– Page 1**

("Motion to Dismiss") is made up almost entirely of reckless, unsubstantiated allegations purportedly supported by incomplete and misleading "evidence" which combine to form an inaccurate snapshot of the Debtor's acts and intentions. Thus, the Motion to Dismiss should be denied.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    History of the Sale

2.    In 2004, Patrick Langan, Michael Langan, Mark Langan and Thomas J. Langan, Jr. (collectively, the "Langan Family") owned real property in Baldwin County, Alabama, upon information and belief, through two family-owned limited liability companies, Bar Pilot Land, LLC ("Bar Pilot") and Pilots Pointe Development, LLC ("Pilots Pointe"). This property was on a peninsula in the Gulf of Mexico commonly known as Fort Morgan (the "Property"). On or about December 2, 2004, the Langan Family filed a petition with the City Clerk of the City of Gulf Shores, Alabama, for the annexation of the Property.

3.    Prior to January, 2005, the Langan Family entered into discussions with Peter Morris to become a partner of the entity to purchase and develop the Fort Morgan Property. On January 4, 2005, the Debtor was formed as a Delaware limited liability company. Fort Morgan Venture, LLC, PRM Realty Group, LLC and McCarthy International, LLC are the members.

4.    On March 1, 2005, the Debtor purchased the Property from Bar Pilot and Pilots Pointe for the total purchase price of $18,850,000.00. Upon information and belief, the Langan Family had purchased the Property a few years earlier for approximately $2 million. The increased value of the Property was attributed to the imminent annexation of the Property to the City of Gulf Shores, which Bar Pilot, Pilots Pointe and the Langan Family represented would be accompanied by zoning to permit the development of the Property with condominiums and

**DEBTOR'S RESPONSE TO WHITE SANDS GROUP, LLC'S AMENDED MOTION TO DISMISS DEBTOR PRS II LLC'S CHAPTER 11 CASE, OR, IN THE ALTERNATIVE, FOR CHANGE OF VENUE – Page 2**

recreational facilities.

5. However, unbeknownst to the Debtor, a lawsuit had been filed by the Fort Morgan Civic Association in the Circuit Court of Baldwin County, challenging the annexation of the Property in 2003 (the "Annexation Lawsuit"). Because of the Annexation Lawsuit, zoning of the Property became so uncertain that no financing could be arranged for developing the Property. Furthermore, on or about July 11, 2005, the City of Gulf Shores enacted an ordinance that no applications for zoning changes would be accepted or acted upon relative to the Fort Morgan Peninsula, including the Property, indefinitely. Thus, it became impossible for the Debtor to develop the Property immediately.

6. The Debtor initiated the adversary proceeding *PRS, II, LLC, d/b/a Fort Morgan v. Thomas J. Langan, Jr., Bar Pilot Land, LLC and Pilots Pointe Development, LLC and Langan Development Company, LLC*, Case No. 09-03315 (the "Adversary") to litigate, among other claims, its claims against the defendants therein for their failure to disclose the Annexation Lawsuit.

7. In negotiating the purchase of the Property, the Debtor was made aware that White Sands Group, L.L.C., Jeff Valentine and Chris Rolison (the "White Sands Group") believed they had some claim to some portion of the Property through a purported agreement with Bar Pilot and Pilots Pointe. However, the Debtor was assured by the Langan Family and authorized representatives of Bar Pilot and Pilots Pointe that the alleged deal with the White Sands Group was not specific enough to rise to the level of a contract, that no non-refundable monies had been exchanged between Bar Pilot, Pilots Pointe and the White Sands Group, and that disposing of the White Sands Group's claim would not be a major impediment for the Debtor.

**DEBTOR'S RESPONSE TO WHITE SANDS GROUP, LLC'S AMENDED MOTION TO DISMISS DEBTOR PRS II LLC'S CHAPTER 11 CASE, OR, IN THE ALTERNATIVE, FOR CHANGE OF VENUE – Page 3**

8. Unfortunately for the Debtor, it turned out that the Langan Family, Bar Pilot and Pilots Pointe representatives had significantly underplayed the seriousness of the White Sands Group's claim in its representations to the Debtor. What the Langan Family had represented to the Debtor as a minor inconvenience, at most, turned out to require lengthy and expensive litigation, with some claims brought by the White Sands Group still pending today. It is this misrepresentation by representatives of Bar Pilot and Pilots Pointe, including the Langan Family, that serves as the basis of another cause of action in the Adversary.

**B.    The Debtor's Bankruptcy Proceeding**

9. The Debtor filed a Voluntary Petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on March 6, 2009 (the "Petition Date"). Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtor is continuing to operate its business and manage its property as a debtor in possession.

10. No trustee or examiner has been appointed in the Debtor's Chapter 11 bankruptcy proceeding, nor has a creditors' committee or other official committee been appointed pursuant to 11 U.S.C. § 1102.

11. The Debtor is an entity managed by PRM Realty Group, LLC. PRM Management of Illinois, Inc. is the Manager of PRM Realty Group, LLC. Peter L. Morris is the Chairman of PRM Management of Illinois, Inc. PRM Realty Group, LLC is a one-third owner of PRS, II. PRS, II owns and manages real property in Alabama.

12. Morris Radio Enterprises, LLC ("Morris Radio") is an entity managed by its sole member, Peter L. Morris. Morris Radio owns and operates the syndicated radio program, "The Business Shrink." On March 5, 2009, Morris Radio filed for bankruptcy protection under Chapter 11 the Bankruptcy Code.

13. On or about April 13, 2009, the court entered an order jointly administering the cases of the Debtor and Morris Radio (Docket No. 24).

### III. RESPONSE

A. **Response to Motion to Dismiss**

14. Movant's sole basis for moving to dismiss the Debtor's Chapter 11 bankruptcy case is that the Petition was not filed in good faith. (Mot. to Dismiss at ¶ 32.)

i. **The Petition was Filed in Good Faith**

15. Under the guise of showing the Court examples of the Debtor's bad faith in filing its voluntary Chapter 11 petition, Movant makes numerous misleading accusations against the Debtor. In an effort to dispose of Movant's allegations as efficiently as possible, the Debtor has listed same, along with its response to such allegations, below:

> a. **The Debtor Did Not Seek to Thwart Movant or Pending Litigation by Not Filing its Notice of Bankruptcy in the Alabama State Litigation Immediately after the Petition Date.**

16. Movant complains that the Debtor seeks to thwart pending state litigation by not listing Movant as a creditor in its Voluntary Petition, or its Amended Petition. (Mot. to Dismiss at ¶ 36.) Initially, it should be noted that even proper creditors are not specifically listed on a voluntary petition. The Debtor admits that, as the result of an accidental oversight, it did not file its Notice of Bankruptcy in the Baldwin County Litigation (*PRS, II, L.L.C. v. White Sands Group, L.L.C.*, Case No. CV-05-923) until September 21, 2009. This delay was not intentional, nor the product of any underlying nefarious plan. Contrary to Movant's assertions, the Debtor has not sought to use this delay to its advantage or to the detriment of any parties therein.

> b. **The Petition was Not Filed as a Litigation Tactic**

17. Movant additionally argues that the Debtor's case was filed as a litigation tactic to

**DEBTOR'S RESPONSE TO WHITE SANDS GROUP, LLC'S AMENDED MOTION TO DISMISS DEBTOR PRS II LLC'S CHAPTER 11 CASE, OR, IN THE ALTERNATIVE, FOR CHANGE OF VENUE – Page 5**

"(a) indefinitely stall the Baldwin County litigation, (b) avoid being both judicially and collaterally estopped from asserting that such contract existed with respect to White Sands and, therefore, any and all claims based thereon, and (c) litigate its case before a distant forum lacking any logical or actual connection to either the underlying property or each party claiming an interest therein." (Mot. to Dismiss at ¶ 41.)  First, had the Debtor been seeking to "indefinitely stall the Baldwin County litigation" then it would stand to reason that the Debtor would have filed its Notice of Bankruptcy in that case immediately upon the filing of its bankruptcy, which the Debtor has admitted it did not do until a few months into the case.  Second, as the Debtor has argued in the Baldwin County Litigation, no enforceable contract existed with respect to the White Sands Group, and the Debtor has not changed its position with respect to that "agreement."  Movant is purposely obfuscating the Debtor's arguments regarding representations of Bar Pilot, Pilots Pointe and the Langan Family or lack thereof in relation to the White Sands Group issues which are made in the Adversary.  Unlike the Annexation Litigation, the Debtor does not allege in the Adversary that it was never apprised of the existence of an alleged claim by the White Sands Group, rather that the defendants therein failed to provide material information with respect to that claim, causing damage to the Debtor.  Third, assuming when it says "litigate its case" that Movant is referring to what is left of the Baldwin County Litigation, the Debtor is not seeking to litigate the Baldwin County Litigation in the Adversary.  The White Sands Group are not defendants in the Adversary, nor are the remaining claims in the Baldwin County Litigation a part of the Adversary.  The only possible overlap between the two cases is that the Adversary notes that the Debtor was forced to bring the Baldwin County Litigation to resolve issues related to the White Sands Group's claims.  Thus, Movant's arguments as to the tactical advantages sought to be achieved by the Debtor in filing its bankruptcy petition are

unfounded and illogical.

18.     Movant also attempts, in its mixed bag of bad faith allegations, to show that the Debtor's claims in the Adversary related to the Annexation Lawsuit are without merit. Movant cites to a deposition of Peter Morris, ostensibly taken in connection with the Baldwin County Litigation, and dated August 8, 2006, as proof that the Debtor was aware of the Annexation Lawsuit at the time of the purchase of the Property on March 1, 2005. (Mot. to Dismiss at ¶ 8.) The cited portions of the deposition show Mr. Morris discussing the status of the project "today" and the complications arising for the project as a result of the Annexation Lawsuit. However, the "today" of Mr. Morris's testimony could only have been August 8, 2006, over a year after the Property as purchased. Thus, statements of Mr. Morris as to what knowledge he had as of August 8, 2006, in no way support Movant's arguments that the Debtor knew of the Annexation Lawsuit on March 1, 2005. In fact, it is Movant who is here misrepresenting to the Court what the evidence actually proves.

19.     Movant also attempts to show some misrepresentation by the Debtor regarding Peter Sterling ("Sterling") and Michael Asfour ("Asfour"). (Mot. to Dismiss at ¶ 14.) However, all of Movant's arguments regarding Sterling and Asfour are misinformed. Sterling and Asfour are not members of the Debtor; at best, they only have a derivative interest. The Debtor stands by its bankruptcy filings with respect to any interests held by Sterling and Asfour.

20.     With a great deal of hyperbole and vitriol, Movant declares that the Adversary is a fraud on the Court. (Mot. to Dismiss at ¶ 13.) While the Debtor concedes that sections of the Adversary related to the White Sands Group could have been worded a bit more clearly, it is obvious that Movant is intentionally misconstruing the Debtor's allegations, searching for mud to fling at the Debtor, in hopes that some might stick. Considering that the Movant is not even a

**DEBTOR'S RESPONSE TO WHITE SANDS GROUP, LLC'S AMENDED MOTION TO DISMISS DEBTOR PRS II LLC'S CHAPTER 11 CASE, OR, IN THE ALTERNATIVE, FOR CHANGE OF VENUE – Page 7**

party to the Adversary, it is clear that it is the Movant who is seeking tactical advantage by filing this Motion to Dismiss.

### c. *Little Creek* Factors Do Not Require a Finding of Bad Faith

21. Movant also cites *Little Creek Development Co. v. Commonwealth Mortgage Corp. (In re Little Creek Development Co.)*, 779 F.2d 1068 (5th Cir. 1986) and certain factors described therein that "generally accompany a bad faith chapter 11 filing." (Mot. to Dismiss at ¶ 43.) As noted by the *Little Creek* Court, "[d]etermining whether the debtor's filing for relief is in good faith depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities. *Little Creek*, 779 F.2d at 1072.

22. While some factors described by the *Little Creek* Court arguably may exist in this case, many others do not. For example, the debtor and one creditor have not "proceeded to a stand-still in state court litigation," nor has the Debtor "been required to post a bond which it cannot afford." *Id.* at 1073. Furthermore, there have been no credible allegations of wrongdoing by the Debtor or its principals. *Id.* Additionally, the Debtor was not "created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors." *Id.* Movant would have the Court force the Debtor to prove up the feasibility and confirmability of a plan of reorganization outside of the plan confirmation process in order to avoid a dismissal of the case.

23. The Debtor, in the exercise of its sound business judgment, determined that this bankruptcy filing was necessary because of immediate and long term cash flow concerns associated with the business, including but not limited to the Annexation lawsuit, and other issues which will be resolved through the Adversary. The Debtor filed this Chapter 11 case in an effort to balance the cash needs and manage their respective debts fairly among all creditors and equity interest owners. "In determining whether to dismiss a case pursuant to section 1112(b),

**DEBTOR'S RESPONSE TO WHITE SANDS GROUP, LLC'S AMENDED MOTION TO DISMISS DEBTOR PRS II LLC'S CHAPTER 11 CASE, OR, IN THE ALTERNATIVE, FOR CHANGE OF VENUE – Page 8**

the inquiry often centers around the debtor's *bona fide* need for a breathing spell to reorganize, and this need must be related to the dual purposes of preserving going concerns and maximizing property available to satisfy creditors." (emphasis in original, internal citations omitted) *In re Mirant Corp.*, 2005 Bankr. LEXIS 1686 (Bankr. N.D. Tex. 2005) *citing In re Original IFPCS'holders, Inc.,* 317 B.R. 738, 750 (Bankr. N.D. Ill. 2004); *see also Grogan v. Garner*, 498 U.S. 279, 286, 111 S. Ct. 654, 659, (1991) (central purpose of Bankruptcy Code is to provide a procedure by which ... debtors can reorder their affairs, make peace with their creditors, and enjoy a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt) (internal citation omitted). Accordingly, the Debtor's filing was done with good faith, for a true bankruptcy purpose, to preserve the value of the estate and maximize property available to satisfy creditors.

### C. Movant's Alternative Motion to Transfer Venue

24. Movant alternatively seeks to transfer venue of the Debtor's bankruptcy case to the Southern District of Alabama pursuant to 28 U.S.C. § 1412. Movant, as the party seeking to transfer venue, bears the burden of showing by a preponderance of the evidence that transfer would be appropriate. *Norton v. Encompass Services Corp.*, 301 B.R. 836 (S.D. Tex. 2003). Movant cites factors to be considered when deciding to transfer venue, pursuant to *In re Commonwealth Oil Refining Co., Inc.*, 596 F.2d 1239, 1247 (5th Cir. 1979) along with bare allegations regarding the location of possible witnesses. However, Movant "must make more than a general allegation that the key witnesses are inconveniently located." *Mohamed v. Mazda Motor Corp.*, 90 F.Supp.2d 757, 775 (E.D. Tex. 2000). "The moving party must specifically identify key witnesses and outline the substance of their testimony." *Id.* (internal citations omitted). Accordingly, Movant has not met its burden as to the "proximity of witnesses" factor.

**DEBTOR'S RESPONSE TO WHITE SANDS GROUP, LLC'S AMENDED MOTION TO DISMISS DEBTOR PRS II LLC'S CHAPTER 11 CASE, OR, IN THE ALTERNATIVE, FOR CHANGE OF VENUE – Page 9**

25. The most important consideration is whether the requested transfer would promote the economic and efficient administration of the estate. *Commonwealth*, 596 F.2d at 1247. As the manager of the Debtor has a residence in Dallas, Texas, and the case has been pending in the Northern District of Texas since March 6, 2009, the most economic and efficient administration of the estate may only be had by continuing the case in the Northern District of Texas.

26. Notably, Bar Pilot and Pilots Pointe have filed a response to the alternative Motion to Transfer (Docket No. 116), indicating their opposition to the transfer relief requested by Movant. Bar Pilot and Pilot Pointe state that they would be prejudiced by incurring expenses in starting the Adversary over in another forum.

27. Furthermore, within the Motion to Dismiss, White Sands ostensibly seeks to overturn the court's order regarding the joint procedural administration of this case with Morris Radio. (Mot. to Dismiss at 2.) The Debtor and Morris Radio qualified for joint administration under Bankruptcy Rule 1015(b) because the Debtor and Morris Radio have the same effective general managing member. Thus, the Debtor and Morris Radio qualified for joint administration as affiliates within the meaning of 11 U.S.C. § 101(2). Moreover, this Court has found that the best interests of the Debtor and Morris Radio's estates would be served by such joint administration. Such joint administration is another reason why Movant's alternative Motion to Transfer should be denied.

WHEREFORE, Debtor respectfully requests an order of this Court denying the relief requested by the Movant herein and for such other and further relief, legal or equitable, special or general to which Debtor may show itself justly entitled.

| | |
|---|---|
| Dated: January 11, 2010 | Respectfully submitted,<br><br>By: /s/ Gerrit M. Pronske<br>Gerrit M. Pronske<br>Texas Bar No. 16351640<br>Rakhee V. Patel<br>Texas Bar No. 00797213<br>Christina W. Stephenson<br>Texas Bar No. 24049535<br>PRONSKE & PATEL, P.C.<br>2200 Ross Ave., Suite 5350<br>Dallas, Texas 75201<br>Telephone: 214.658.6500<br>Facsimile: 214.658.6509<br>Email: gpronske@pronskepatel.com<br>Email: rpatel@pronskepatel.com<br>Email: cstephenson@pronskepatel.com<br><br>**COUNSEL FOR DEBTORS** |

### CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on January 11, 2010 I caused to be served the foregoing pleading upon the attached service list via the Court's electronic transmission facilities and/or United States mail, first class delivery.

                                            /s/ Gerrit M. Pronske
                                            Gerrit M. Pronske